# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **D. DEATON, et al.** | ) |
| **Plaintiffs.** | ) |
| v. | )   CASE NO.: 23-cv-00713-RDP |
| **PATRICIA STEPHENS, et al.** | ) |
| **Defendants.** | ) |

## REPLY TO PLAINTIFFS' RESPONSE
## TO ORDER TO SHOW CAUSE

**NOW COME** the Davidson defendants and reply to the plaintiffs' response to the August 24, 2023, order to show cause as follows:

This Honorable Court ordered the plaintiffs to show cause why this action should not be dismissed under the Rooker-Feldman Doctrine, Younger Abstention Doctrine, Colorado River Abstention Doctrine, and/or Child-Custody Exception to Federal Jurisdiction.

Plaintiffs filed a timely response in which plaintiffs contend none of the abstention doctrines apply because, the plaintiffs contend (a) the plaintiffs do not seek reversal of state court orders, (b) there is no parallel state court case warranting abstention, (c) the plaintiffs do not seek injunctive relief, and (d) the plaintiffs do not seek a divorce, alimony, or child custody decree. But, there is no other reason for the

plaintiffs to present these claims to this Honorable Court but for this court to review the propriety of the judgment exercised by state court domestic relations tribunal(s). *Infra*. Accordingly, this matter is due to be dismissed.

In their complaint, the plaintiffs essentially allege the defendants, jointly and severely, conducted or actively participated in conduct of an association, to wit: state court divorce, child custody, and post-judgment proceedings, through a pattern of racketeering activity, to wit: issuing court orders, charging fees for professional services rendered, and/or disagreeing with one or more of the plaintiffs, in violation of 18 U.S.C. § 1962(c) or, in the alternative conspired to conduct or participate in the conduct of such an enterprise through a pattern of such putative "racketeering activity" in violation of 18 U.S.C. § 1962(d).

In their attempt to articulate a black letter RICO claim, plaintiffs characterize consensus among members of the bench, bar, and professional service providers in multiple states as "collusion" or "conspiracy" among a "criminal enterprise"; compensation for professional services rendered as "bribes" or "extortion"; and any adverse ruling, professional recommendation, action, or opinion as "criminal activity". Plaintiffs sprinkle in additional state law claims couched in similar rhetoric. However, to date, he plaintiffs have failed to allege any set of facts that support a cognizable RICO violation/claim or claim for deprivation of one or more

constitutional right(s).

Each and every allegation asserted by the plaintiffs in this cause is rooted in a divorce/child custody proceeding that either has been or is currently being litigated in one or more state trial and/or appellate courts. Therefore, for each of the reasons set out in *Rooker*, *Younger*, and *Colorado River*, this matter is due to be dismissed.[1] Alternatively, this matter is due to be dismissed under the child-custody exception to federal jurisdiction.[2]

The putative "enterprise" is entirely and exclusively comprised of judges who presided over the plaintiffs' respective extensive and highly contentious divorce and post-judgment litigation; attorneys who represented various parties in the divorce and post-judgment litigation; special masters, guardians ad litem, and parenting coordinators who provided professional services during the divorce, child custody, and post-judgment proceedings; and mental health professionals who were witnesses or potential witnesses in the litigation.

---

[1] The Rooker–Feldman doctrine holds that lower federal courts—i.e., courts other than the Supreme Court—should not sit in direct review of state court decisions unless Congress has specifically authorized such relief. The Younger Doctrine holds that federal courts should abstain from cases that are pending in state proceedings. The Colorado River doctrine holds that a federal court faced with "exceptional circumstances" can abstain from exercising its federal jurisdiction if there is a parallel proceeding in state court.

[2] Federal courts generally do not exercise jurisdiction in child custody matters.

In support of their claims, plaintiffs allege a course of events that have been litigated during their respective divorce and child custody proceedings, could have been raised during the divorce and child custody proceedings, or could be raised in pending post-judgment proceedings or otherwise. Plaintiffs have summarized their allegations under headers "A" through "FFF" throughout their complaint. These defendants will direct the court's attention to the headers utilized by the plaintiffs instead of belaboring overstated particularized allegations.[3]

In headers "A" through "C" plaintiffs express sour grapes over fees and expenses incurred by two of the plaintiffs as a result of their involvement in protracted litigation.

In "D", plaintiffs allege a judge was removed from the bench for reasons unrelated to their litigation. In "E", plaintiffs allege an assault occurred between one of the plaintiffs and their former spouse which resulted in the issuance of a protective order. The plaintiffs do not appear to challenge the issuance of the protective. It goes without saying, said protective order was issued in favor of one or more of the plaintiffs.

---

[3]The Davidson Defendants do not concede the veracity of any of the conclusory statements expressed in "A" through "FFF".

The allegations set out in sections "F" through "P" have been litigated or could have been litigated in one or more of the plaintiffs' divorce/child custody proceedings in state courts in Alabama and/or Maryland, to wit:

    F.    The Preschool Shakedown.

    G.    Defendant GAL Brantley's Appointment.

    H.    Children's Testimony.

    I.    GAL Brantley Directed Violations of a Maryland Protection Order and Directed Changes to Mr. D. Deaton's Custodial Time with His Children.

    J.    Attorney Fann Appoints Her Friend, Ms. C. Taylor, with an Unlimited Budget and Recommends that a non-Attorney be Allowed to Enter Judge's Orders; Judge Chappell Orders the Recommendation with Devastating Effects on G.M.W.

    K.    GAL Wess Accepts Bribe from Ms. C. Wyatt and Mr. G. Wyatt.

    L.    GAL Brantley Objects to Herself.

    M.    GAL Brantley Substantially Profits from Scheme and Starts New Law Firm.

    N.    Mr. D. Deaton Asks to Remove GAL Brantley.

    O.    GAL Brantley Selects Medical Provider to Evaluate the Deaton Minor Children.

    P.    Attorney Drennan writes-in Attorney Davidson to a handwritten agreement as Parenting Coordinator.[4]

These allegations are grounded exclusively upon issues that have been litigated in one or more of the plaintiffs' divorce proceedings. The only logical reason for the plaintiffs' to present these "facts" to this Honorable Court is for this court to review the propriety of the judgment exercised by a state court divorce tribunal.

The medicaid benefits and financial referenced in "Q" and "R" have been or should be addressed in the divorce, child custody, or post-judgment proceedings.

Likewise, the allegations set out in sections "S" through "RR" have been or could have been litigated in the state court divorce/child custody proceedings, to wit:

    S.    Attorney Gregory Absconds with G.M.W.

    T.    Ms. C. Wyatt Threatens Process Server with Gun Violence.

    U.    Defendants Attorney Yarbrough, Attorney Gregory and Crittenden Partners File an Emergency Motion to Prevent G.M.W. from starting kindergarten at Highlands School, where both Parents Toured and Paid an Application Fee to Hold G.M.W.'s Spot.

    V.    GAL Wess Goes to Georgia.

---

[4] It is evident many of the plaintiffs' allegations are conclusory statements offered without factual support. For example, the plaintiffs make frequent references to "fraud" and "bribes" without pleading sufficient particularized allegations to support such claims.

W.   GAL Brantley Goes to Maryland.

X.   Attorney Drennan and Attorney Duncan hired a Private Investigator to Threaten G.M.W. Inside of his Home.

Y.   Attorney Drennan Falsely Represents that Mr. D. Deaton Accused Ms. L. Deaton of Sending a Bomb to the Minor Children.

Z.   Mr. D. Kellner Accepted a Bribe to Travel to the State of Alabama Without the Minor Children's Records to Participate in a Cover Up of the Children's Testimony.

AA.  GAL and PC Collusion.

BB.  Ms. C. Taylor and GAL Wess directed G.M.W. to See Dr. Mashburn: The Therapist They Selected for the Minor Child.

CC.  Ms. C. Taylor, a Non-Attorney, acts as a Judge and Judge Chappell does not Intervene to Supervise her Appointment.

DD.  Attorney Davidson and GAL Brantley Demand to Speak to Mr. D. Deaton's Work Supervisor for Him to See His Children Despite No Requirement for the Same in Court Order; Following These Events, Mr. D. Deaton was Let Go from His Job During the Pandemic.

EE.  Maryland Court Intervenes to Protect Deaton Children.

FF. Ms. Deaton's Retaliatory Petition for Protection from Abuse Denied in Maryland; GAL Brantley Intervenes in a Department of Social Services Investigation in Maryland.

GG. Judge Stephens Refuses to Allow to Maryland Court Emergency Jurisdiction.

HH. GAL Brantley and Attorney Drennan Collude with Judge Stephens to Eliminate J.K.D., L.W.D., and R.E.D.'s Christmas visitation with their father and legal guardian without a hearing or any testimony.

II. Ms. C. Coker and Ms. A. Weiss Imprison J.K.D. and Withhold Her Records Despite Safety Concerns and a State Emergency Court Order.

JJ. After being Convicted of Crimes and Refusing to Pay the Judgement Ordered, Mr. C. Langrall Transports J.K.D. from St. Anne's School to his Personal Residence While the School Withholds J.K.D.'s Transportation Records.

KK. JA Brantley, the biological daughter of GAL Brantley and the Official Judicial Assistant of Judge Chappell, directly received pleadings from the confidential Deaton case and pleadings from the Deaton case in Maryland against the Judicial Inquiry Commission's reported recommendations.

LL. Dr. Labellarte prescribes medication to J.K.D. against Mr. D. Deaton's and J.K.D.'s objection and J.K.D.'s concerns with his care.

MM. Ms. D. Maynard Diagnoses J.K.D. at age 12 and Then Refuses to Speak to Mr. D. Deaton Regarding His Concerns for His Child.

NN. Dr. Blotcky, the Court Appointed Expert, Illegally Practices in Multiple States Without a License.

OO. Attorney Drennan advised Ms. L. Deaton to file a crossclaim against D. Deaton for custody with no change of circumstance and later admitted custody was not at issue but refused to amend or withdraw the claim.

PP. GAL Brantley Falsely Imprisoned J.K.D., L.W.D, and R.E.D. Against Their Consent and Against the Consent of Mr. D. Deaton During Trial

QQ. Judge Stephens Dismisses Mr. D. Deaton's Custody Case with Prejudice after Attorney Drennan Represents his Discovery is Deficient.

RR. Judge Stephens Conducts a Secret Phone Call About the Deaton Case.

Again, each of the allegations contained in "S" through "RR" are grounded exclusively upon issues that have been litigated in one or more of the plaintiffs' divorce proceedings. The only logical reason for the plaintiffs' to present these "facts" to this Honorable Court is for this court to review the propriety of the judgment exercised by the state court divorce tribunal(s).

While plaintiffs may disagree with the statements made by parties at issue in "SS", these issues either have been litigated or could have been litigated in the divorce proceedings and have withstood the scrutiny of the Alabama State Bar. Nonetheless, the testimony of the particular defendants submitted in state court or administrative proceedings does not give rise to any cause of action asserted in this cause.

The allegations set out in sections "TT" though "XX" have also been litigated in the state court divorce/child custody proceedings, to wit:

TT. Ms. T. Miller Administers Psychological Testing to Plaintiff's L.W.D. and R.E.D. Without Any Notice to Mr. D. Deaton.

UU. Judge Chappell Uses Public Property While on Duty During Business Hours to Film Campaign Video Advertisements Against Ms. T. Peake's Attorney and Then Refuses to Recuse.

VV. Judge Stephens Recuses from Ms. T. Peake's custodial case. Then, Judge Stephens Takes Evidence from Ms. T. Peake's Case and Provides it to Attorney Drennan and Attorney Duncan.

WW. Three Attorneys Conspire with Attorney Drennan and Attorney Duncan to Provide False Sworn Statements to the Alabama Court of Civil Appeals.

XX. Judge Stephens Makes Four False Statements to the Alabama Court of Civil Appeals to Cover Up Her Bad Acts.

The allegations made in "WW" and "XX" have also been presented/litigated in the Alabama Court of Civil Appeals. There is no reason for these issues to be brought

before this court but for this Honorable Court to review the propiety of the judgment exercised by the state court tribunals and the Alabama Court of Civil Appeals.

The allegations set out in sections "YY" through "DDD" have been litigated in the state court child custody proceedings, to wit:

YY. Judge Stephens Orders Mr. D. Deaton's Attorneys in State and Out of State to Destroy Legally Subpoenaed Evidence.

ZZ. Judge Stephens ejects T. Peake's attorney from her courtroom multiple times without any stated reason.

AAA. GAL Wess Attempts to extort Ms. T. Peake to Cease Interfering with parental and custodial rights for $40k.

BBB. Attorney Yarbrough and Attorney Gregory removed sealed records from Judge Chappell's chambers; Judge Chappell admits it was wrong but prohibits them from being called to testify.

CCC. Judge May Refuses to Order Ms. T. Peake and Mr. S. Wyatt's Stipulations and Agreement on the Record, Including the Removal of GAL Wess.

DDD. Despite His Dismissal as GAL, GAL Wess Continues to Litigate in the Alabama Court of Civil Appeals Without Any Authority or Authorization.

The allegations in "DDD" have also been presented/litigated in the Alabama Court of Civil Appeals. There is no reason for these issues to be presented to this Honorable Court but for the court to review the judgment exercised by the state court tribunal(s).

The allegations set out in "EEE" and "FFF" have been and are believed to remain the subject of litigation in the state court child custody proceedings.

> EEE. Alabama Counselor Agrees to See Deaton Minor Children to Provide Assistance at Mr. D. Deaton's Request for Help; GAL Brantley and Attorney Drennan Collude to Direct the Medical Care of the Minor Children.
>
> FFF. Judge Stephens Enters an Order Denying Mr. D. Deaton his Right to use Documents from his Case to Report the Criminal and Illegal Activity Detailed in this Complaint to State and Federal Regulatory Agencies.

There is no reason for these issues to be presented to this Honorable Court but for the court to review the judgment exercised by the state court tribunal(s).

Counts 1 through XXVI of plaintiffs' complaint incorporate the "facts" set out in sections "A" through "FFF" by reference in support of the respective claims. As set out herein-above, each of the allegations set out in support of counts I through XXVI either have been, could have been, are being litigated, or should be litigated in the state court divorce/child custody proceedings. Therefore, these claims are due to be dismissed due to *Rooker*, *Younger*, *Colorado River*, and/or the child custody

exception to federal jurisdiction.

Whether by design or by oversight, plaintiffs did not incorporate the allegations in "A" through "FFF" in support of counts XXVII through XXXI. In fact, plaintiffs do not allege any "facts" in support of the claims asserted in counts XXVII through XXXI. Plaintiffs merely make conclusory statements in support of these claims. Accordingly, plaintiffs have failed to state any claims for which relief can be granted in counts XXVII through XXXI.

However, it is clear from a review of the facts asserted in support of counts I through XXVI, the legal malpractice claims asserted in counts XXVII through XXVIX are asserted against a parenting co-ordinator, a daily master, and attorneys who were merely involved in the state court divorce/child custody proceedings and took positions or made recommendations unfavorable to one or more of the plaintiffs. Likewise, the malpractice claims asserted against the mental health providers in Counts XXX through XXXI are based on the fact the respective defendants provided or were expected to provide testimony concerning issues litigated or pending in the state court child custody proceedings one or more of the plaintiffs did or do not deem favorable. Again, each of these issues were litigated, are being litigated, or could be litigated in the state court divorce/child custody/post-judgment proceedings. Accordingly, for each of the reasons set out in *Rooker*, *Younger,* and *Colorado River*,

this matter is due to be dismissed.

In their prayer for relief, plaintiffs make their intension clear. The plaintiffs "seek access to a proper and unbiased court to hear these issues affecting minor children on their merits", to wit: the care, custody, and control of minor children. Accordingly, this matter is due to be dismissed via the child custody exception to federal jurisdiction.

Respectfully submitted,


s/Scott A. Gilliland
Counsel for Kim Davidson and
Kim Davidson Law Office LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on counsel of record for each of the parties via the CM/ECF electronic filing system on this 7th day of September, 2023, and on the following entities via U.S. Mail at the office of their registered agent:

Wallace Jordan Ratliff & Brandt LLC

Alan D. Blotcky, PhD LLC


/s/Scott A Gilliland