FILED

2023 Sep-19  PM 05:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| D. DEATON, et al., | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| v. | } | **Case No.:  2:23-cv-00713-RDP** |
| | } | |
| PATRICIA STEPHENS, et al., | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on the pending Motions to Dismiss or Motions for More Definite Statement. (Docs. # 45, 49, 50, 51, 57, 79, 84, 105, 120, 125, 137, 138, 139, 148, 155, 158, 160, 161, 162, 166, 167, 169, 174, 177, 181, 188, 189, 192, and 196). The Motions raise a variety of arguments, some of which are applicable only to certain Defendants. But, other issues have been raised that apply across the board to all Defendants' Motions: the *Rooker-Feldman*[1] doctrine, the *Younger*[2] abstention doctrine, the *Colorado River*[3] abstention doctrine, and the Domestic Relations Exception to Federal Jurisdiction. Rather than having Plaintiffs respond to each of the 29 individual Motions, on August 24, 2023, the court ordered Plaintiffs to brief these particular issues. (Doc. # 183). Plaintiffs have filed their response (Doc. # 193), and Defendants have filed replies and/or joinders in other parties' replies. (Docs. # 195, 197-204).

---

[1] *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

## I.     Background

Plaintiffs Taylor Peake (*née* Wyatt) and Drew Deaton are a married couple who each have minor children from previous marriages. (Doc. # 1 ¶ 75). Plaintiff Peake is the mother of G.M.W., and Plaintiff Deaton is the father of J.K.D., L.W.D., and R.E.D. (*Id.* ¶¶ 20-21). After marrying in 2019, Plaintiffs Peake and Deaton each pursued separate actions in the Domestic Relations Division of the Circuit Court of Jefferson County, Alabama seeking custody of their minor children. (*Id.* ¶¶ 76-78); *Deaton v. Deaton*, Case No. DR-2018-901324.03; *Wyatt v. Wyatt*, Case No. DR-2018-900658.03. Both these domestic relations actions are ongoing.

Plaintiffs' Complaint in this case asserts thirty-one claims against fifty-two Defendants -- including Alabama judges, lawyers, law firms, and others -- related to various divorce, custody, and other cases in the Circuit Court of Jefferson County, Alabama.[4] (Doc. # 1). The facts alleged in the Complaint all relate to matters occurring in connection with those state court cases. (*Id.*). Plaintiffs assert claims under 42 U.S.C. § 1983, 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations Act), and Alabama law. (*Id.* at 127-77). Twenty-six of the thirty-one claims in the Complaint "incorporate by reference all preceding paragraphs as if fully set forth herein." (Doc. # 1 at ¶¶ 645, 681, 701, 711, 719, 724, 732, 743, 748, 753, 758, 763, 773, 778, 787, 794, 800, 808, 817, 826, 833, 841, 848, 855, 862, and 869).

In their prayer for relief, Plaintiffs state that they do not advocate for "reversal of state court orders." (Doc. # 1 at 178). Rather, they "seek access to a proper and unbiased court to hear these

---

[4] *See, e.g.*, *Peake v. Wyatt*, No.: DR-2018-900658.01 (Jeff. Co. Cir. Ct.) (post-divorce modification); *Peake v. Wyatt*, No.: DR-2018-900658.02 (Jeff. Co. Cir. Ct.) (post-divorce modification); *Peake v. Wyatt*, No.: DR-2018-900658.03 (Jeff. Co. Cir. Ct.); *Peake v. Wyatt*, No.: DR-2019-500624 (Jeff. Co. Cir. Ct.) (protection from abuse action transferred to domestic relations court); *Peake v. Wyatt*, No.: DR-2021-500810 (Jeff. Co. Cir. Ct.) (protection from abuse action transferred to domestic relations court); *Deaton v. Deaton*, No.: 2018-901324.03 (postdivorce modification), *Deaton v. Help Lightening, Inc.*, No.: CV-2020-902328 (Jeff. Co. Cir. Ct.) (conversion action by D. Deaton against L. Deaton's father); *Peake v. Drennan*, No.: CV-2023-900555 (Jeff. Co. Cir. Ct.) (battery action by T. Peake against Defendant Jessica Drennan).

issues affecting minor children on their merits []." (*Id.*). Plaintiffs further seek "[a]n order declaring all Defendants' acts or omissions, described herein" (which relate to Plaintiffs' state court cases and include judicial acts and omissions) were unconstitutional. (*Id.*). In addition, they seek compensatory and punitive damages. (*Id.*).

Shortly after filing the Complaint in this action, Plaintiffs also filed an Emergency Motion for Relief Under the All Writs Act or in the Alternative a Temporary Restraining Order and Preliminary Injunction. (Doc. # 7). In that Motion, Plaintiffs specifically requested that this court intervene in the ongoing state court litigation. (Doc. # 7). In that Motion, Plaintiffs request the following relief:

A. *An order prohibiting alleged members of The Enterprise*, including but not limited to, Attorney Drennan, Attorney Duncan, and GAL Brantley *from participating in Deaton v. Deaton (DR-2018-900658.03)* except to resign, recuse, otherwise reassign the case to someone other than a member of The Enterprise, additionally or in the alternative;

B. An order *issuing a stay of the Plaintiffs' state court proceedings* presided over by Judge Patricia Stephens;

C. A temporary restraining order and preliminary injunction *prohibiting the Defendant Judge Stephens from presiding over the Plaintiffs' state court matters*;

D. Any other relief this Court deems just and proper.

(Doc. # 7 at 9) (emphasis added).

## II.   Standard of Review

"Federal courts are courts of limited jurisdiction and are required to inquire into their [subject matter] jurisdiction at the earliest possible point in the proceeding." *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1279-80 (11th Cir. 2001) (citations omitted). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject

matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

Federal Rule of Civil Procedure Rule 8(a) states that a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. Federal Rule of Civil Procedure Rule 10(b) states in relevant part that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

## III.   Analysis

After careful review, the court concludes that Plaintiffs' Complaint is a shotgun pleading and permitting repleading would be futile because principles of comity, equity and federalism counsel toward this court abstaining in this controversy. The court explains this ruling below.

### A.   Plaintiffs' Complaint is a Shotgun Pleading

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). The Eleventh Circuit has repeatedly and vehemently condemned shotgun pleadings. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to

4

which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) ("[W]e 'have little tolerance for shotgun pleadings.'"). Plaintiffs' Complaint falls into the first category. Twenty-six of the thirty-one counts of the Complaint incorporate by reference all preceding paragraphs. (*See* Doc. # 1, generally). So, the court and Defendants are left without proper notice of (1) the specific facts that support Plaintiffs' various claims and (2) what claims are asserted against which Defendants.

A court faced with a shotgun pleading has the inherent authority to *sua sponte* demand repleader of such a complaint pursuant to Rule 12(e). *See Wagner v. First Horizon Pharm. Corp*., 464 F.3d 1273, 1275 (11th Cir. 2006) ("We also remind district courts of their supervisory obligation to *sua sponte* order repleading pursuant to Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates."). The Eleventh Circuit strongly encourages "a district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Est. of Bass*, 947 F.3d at 1358.

## B.      Requiring Repleading Would be Futile

In relevant part, Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within twenty-one days of service of either that party's pleading or a Rule 12(b) motion. Fed. R. Civ. P. 15(a). Otherwise, a party may only file an amended pleading with the written consent of the opposing party or leave of court. *Id*. Numerous motions to dismiss have been pending for over twenty-one days, and Plaintiffs have not sought to amend

their Complaint. Of course, as the Complaint is a shotgun pleading, the court could order Plaintiffs to replead.

This court is well aware that leave to amend should be freely granted. Fed. R. Civ. P. 15(a). But, a court need not grant leave to amend where (1) there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by previous amendments; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) any amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (noting that although leave to amend "should be freely given," a court may deny leave when amendment would be "futile."). For the reasons discussed below, the court concludes that any amendment to the Complaint would be futile.

### C.     Plaintiffs' Complaint Is Barred in Part by the *Rooker-Feldman* Doctrine

To the extent that Plaintiffs' child custody disputes and other state court cases have concluded with judgments on the merits, the *Rooker-Feldman* doctrine bars this court's review of those final judgments. *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine limits a district court's jurisdiction over certain matters related to prior state court litigation, and applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine's reach "extends not only to federal claims actually raised in state court, but also to federal claims 'inextricably intertwined' with the state court's judgment, meaning those that can 'succeed[] only to the extent that the state court wrongly decided the issues' before it." *Lawton v.*

*Rosen*, 559 F. App'x 973, 974 (11th Cir. 2014) (per curiam) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

The *Rooker-Feldman* doctrine forecloses Plaintiffs' efforts to use this action as a mechanism to overturn any final state court orders resolving child custody-related claims they raised, or had a reasonable chance to raise, in that forum. *See Fox v. Fla. Dep't of Children & Families*, 828 F. App'x 639, 640 (11th Cir. 2020) (per curiam) ("We've applied *Rooker-Feldman* principles to child custody proceedings on multiple occasions and have concluded that, under *Rooker-Feldman*, we may not interfere with final judgments rendered by state courts.") (collecting cases); *Thomas v. Disanto*, 762 F. App'x 770, 772-73 (11th Cir. 2019) (per curiam) (affirming the district court's finding that the *Rooker-Feldman* doctrine was a jurisdictional bar to the review of a state court child custody matter to the extent the proceeding had concluded); *see also Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001) (describing a federal action seeking "an injunction preventing enforcement of [a] state court judgment and returning custody to the aggrieved parent" as an "easy case for application of the *Rooker-Feldman* doctrine").

Moreover, "*Rooker-Feldman* [] does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) (citing *May v. Morgan County*, 878 F.3d 1001, 1004 (11th Cir. 2017) (A "state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim.")). In *Behr*, the Eleventh Circuit reiterated that the *Rooker-Feldman* doctrine bars "only 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection

of those judgments.'" *Behr*, 8 F.4th at 1212 (quoting *Exxon Mobil*, 544 U.S. at 284 and citing *Nicholson*, 558 F.3d at 1274).

Although Plaintiffs assert in their Complaint that they "do not seek reversal of state court orders," they acknowledge that they "seek access to a proper and unbiased court to hear these issues affecting minor children on their merits." (Doc. # 1 at ¶¶ 906, 907). They also request "[a]n order declaring that all Defendants' acts or omissions" related to the state law cases are unconstitutional. (Doc. # 1 at 178). But these issues were heard and decided in the state court and it is crystal clear that Plaintiffs now want a re-do in this court and an order holding that the state court's decisions were tainted by the allegedly unconstitutional actions of Defendants.

The court finds that each of Plaintiffs claims is "inextricably intertwined" with decisions made by the state court because either (a) a ruling in Plaintiffs' favor would "effectively nullify" the state court judgments and/or (b) Plaintiffs' claims "succeed[] only to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (citations omitted). Thus, to the extent the underlying state court child custody proceedings concluded before this action commenced, and Plaintiffs complain of injuries caused by any final judgments issued by the state court and seeks this court's review of such judgments, Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. *See Thomas*, 762 F. App'x at 773.

D.    **The *Younger* Abstention Doctrine Also Bars These Proceedings**

To the extent that the state court child custody proceedings are ongoing, Plaintiffs' claims are barred by the *Younger* abstention doctrine. Although, as a general rule, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the *Younger* abstention doctrine is a notable exception to that rule.

The abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971) "bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Adams v. Florida*, 185 F. App'x 816, 816-17 (11th Cir. 2006) (per curiam) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)). *Younger* abstention is not triggered unless the federal relief would create an undue interference with state proceedings and the state proceedings at issue involve orders that uniquely further the state courts' ability to perform their judicial functions. *Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004).

As best can be discerned from Plaintiffs' Complaint, they invite the court to engage in such a prohibited interference here. That is, they ask the court to declare that all challenged actions by Defendants in their state court lawsuits are unconstitutional. (Doc. # 1 at 178). They have also asked this court to stay the state court proceedings and prohibit Judge Stephens from presiding over the case(s) pending before her. (Doc. # 7 at 9). More specifically, they asked this court to order Judge Stephens to recuse herself from the case pending before her. As a result, *Younger* abstention appears to be warranted. *See Narciso v. Walker*, 811 F. App'x 600, 601-03 (11th Cir. 2020) (per curiam) (citing *Younger* in affirming the dismissal of a plaintiff's federal court challenge under 42 U.S.C. § 1983 to child custody proceeding pending in state court); *Thomas*, 762 F. App'x at 772-73 (agreeing with district court's alternative finding that the plaintiff's federal lawsuit over a child custody matter was barred by *Younger* to the extent the proceedings were ongoing); *Liedel v. Juvenile Court*, 891 F.2d 1542, 1546 (11th Cir. 1990) (recognizing that "under *Younger* [abstention,] federal district courts may not interfere with ongoing child custody proceedings") (citing *Moore v. Sims*, 442 U.S. 415 (1979) (applying *Younger* abstention doctrine

to prevent federal court action seeking to enjoin pending state child custody proceeding brought by state authorities)).

For a federal court to abstain in favor of state court proceedings, three questions must be answered in the affirmative: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *31 Foster Children*, 329 F.3d at 1279 (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (emphasis omitted) (alterations in original). "The date a plaintiff files his complaint in federal court is the relevant date for purposes of determining the applicability of *Younger* abstention." *Narciso*, 811 F. App'x at 601 (citing *Liedel*, 891 F.2d at 1546 n.6).

The court addresses the *Middlesex* factors in turn. First, at the time Plaintiffs filed this case, their state court proceedings were ongoing. (Doc. # 1 at ¶¶ 23, 26, 103, 167, 172, 272, 523). Further, the fact that the state court proceedings have been ongoing is also evidenced by Plaintiffs' Emergency Motion for Relief which asked this court to stay Plaintiffs' state court custody proceedings and prohibit Judge Stephens from presiding over the cases. (Doc. # 7 at 9). Second, "there is no question that child custody matters implicate important state interests." *Sanders v. Child Advoc. Ctr.*, 2023 WL 5124265, at *5 (S.D. Ala. July 11, 2023), *report and recommendation adopted*, 2023 WL 5103133 (S.D. Ala. Aug. 9, 2023) (collecting cases); *see also Narciso*, 811 F. App'x at 602 ("[f]amily relations are a traditional area of state concern." (quoting *Moore v. Sims*, 442 U.S. 415, 435 (1979)). Finally, as to the third question, the Eleventh Circuit has said that a "federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* (quoting *31 Foster Children*, 329 F.3d at 1279 (in turn quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987))) (internal quotations omitted).

Further, Plaintiffs have every opportunity to appeal any decision by the state court and seek extraordinary relief, as appropriate, on an interim basis. In *Moore v. Sims*, 442 U.S. 415 (1979), the Supreme Court held that the principles of *Younger* also apply in the context of state child custody cases." *Liedel*, 891 F.2d at 1546. "Thus, under *Younger* and *Sims*[,] federal district courts may not interfere with ongoing child custody proceedings." *Id*. Therefore, *Younger* abstention appears appropriate here.

Without question, there are certain exceptions to the *Younger* abstention doctrine: "(1) there was evidence the state proceedings were motivated by bad faith; (2) there was no adequate alternative state forum where the constitutional issues could have been raised; (3) the state law being challenged was patently unconstitutional; or (4) more generally, a federal injunction was necessary to prevent great and irreparable injury." *Narciso*, 811 F. App'x at 602 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc*., 477 U.S. 619, 626 (1986) and *For Your Eyes Alone, Inc., v. City of Columbus*, 281 F.3d 1209, 1214 n.11 (11th Cir. 2002)). None of those apply here.

Other than arguing that *Younger* abstention does not apply, Plaintiffs have not addressed any of the potential exceptions to the doctrine. Nor can their general assertions be read to advocate for an exception as "[m]ere conclusory allegations [] are insufficient to overcome *Younger*—a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000); *see also Davis v. Self*, 547 F. App'x 927, 931 (11th Cir. 2013) (noting that "vague and conclusory allegations ... do not rise to the level necessary to justify an exception to *Younger* abstention"). And, as the Eleventh Circuit has concluded, "state courts can generally adequately address federal constitutional claims." *Shuler v. Meredith*, 144 F. App'x 24, 26 (11th Cir. 2005) (citing *Butler v. Alabama Judicial Inquiry Comm'n*, 261 F.3d 1154, 1159 (11th Cir. 2001)). The exceptions do not apply

where a plaintiff "just disagrees with the state court proceedings." *Thomas*, 762 F. App'x at 773, n.4.

Plaintiffs have not proffered any reason why the Alabama state courts are not an adequate forum to litigate the issues raised in this case, other than to point out that in state court they did not succeed on their claims. But that contention itself implicates the *Rooker-Feldman* doctrine. Accordingly, Plaintiffs' claims are subject to dismissal pursuant to the *Younger* abstention doctrine.

In their briefing on this issue, Plaintiffs assert that they do not seek injunctive relief. Therefore, they argue, *Younger* does not apply. The Eleventh Circuit has not directly addressed this issue of whether *Younger* applies to claims for money damages. It has noted that "there is an [open] issue about whether *Younger* abstention extends to damages claims." *Carter v. Dep't of Child. & Fams.*, 2022 WL 2921310, at *3 (11th Cir. July 26, 2022), *cert. denied sub nom. Carter v. Fla. Dep't of Child. & Fams.*, 143 S. Ct. 1057 (2023) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719-21 (1996) ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions."); *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1552 n.12 (11th Cir. 1996) ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles.").

In their Complaint, Plaintiffs have not requested relief under their individual claims. As to all claims, Plaintiffs seek declaratory relief holding that "all Defendants' acts or omissions, described herein" were unconstitutional. For purposes of the *Younger* doctrine the question is "whether the federal proceeding would interfere with the state proceeding." *Bush*, 329 F.3d at 1276. Unquestionably, a declaration that an order entered in a pending state court proceeding is

unconstitutional would interfere with that proceeding. Therefore, it would be wholly inappropriate under *Younger* for this court to exercise jurisdiction over the requests for relief made in this case. This court must defer to the ongoing state court cases which are subject to review by the Alabama Supreme Court, not federal district courts.

### E.     The Colorado River Doctrine Counsels in Favor Of Abstention

Under the *Colorado River* doctrine, a federal district court may "dismiss or stay an action when there is an ongoing parallel action in state court." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (quoting *LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989)). The principles of the doctrine "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 817). Under the doctrine, "a federal court may defer to a parallel state proceeding under "limited" and "exceptional" circumstances. *Moorer*, 374 F.3d at 997 (citing *Colorado River*, 424 U.S. at 817-18).

There is no bright-line test for determining when an existing, concurrent state case warrants federal court abstention in a parallel federal case. *Ambrosia Coal*, 368 F.3d at 1328. Nonetheless, the Eleventh Circuit has indicated that a district court may consider the following factors in determining whether exceptional circumstances exist:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer*, 374 F.3d at 997 (quoting *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir. 1998)). Of course, "[t]he decision whether to dismiss 'does not rest on a mechanical checklist, but

on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16 (1983)). The weight attributed to each factor varies on a case-by-case basis, and depends on the particularities of that case. *Id.* A single factor alone can be the sole reason for abstention. *Id.* Thus, here, the court asks two questions: (1) whether there is a state-court proceeding that is sufficiently parallel to this action; and (2) if so, when applying the factors discussed above, do exceptional circumstances exist that counsel toward staying this action?

In order for the *Colorado River* doctrine to apply, there must be a state case parallel to the federal one. *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (citation omitted). The federal and state proceedings do not have to contain the same parties, issues, and requests for relief to be identical. *Ambrosia Coal*, 368 F.3d at 1329-30.  "The crucial question is whether the 'similarity between the two cases is sufficient to justify the conclusion that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.'" *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (quoting *Brown v. Blue Cross & Blue Shield of Fla., Inc.*, 2011 WL 11532078, at *8 (S.D. Fla. Aug. 8, 2011)). A district court may appropriately undertake the *Colorado River* analysis when the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330. Here, this action and the state court actions are substantially similar. Although different causes of action are asserted here, this entire action is premised on Plaintiffs' arguments that the challenged actions taken by Defendants in the parallel state cases were unconstitutional or otherwise unlawful. And, the actors and parties in the state and federal litigation are substantially the same. Thus, the court readily concludes that the two actions involve

substantially the same parties and issues, making them parallel actions under the *Colorado River* doctrine.

Turning to the relevant factors, the first two factors, (1) the order in which the courts assumed jurisdiction over property, and (2) the relative inconvenience of the fora are not implicated here. The third factor, (3) the order in which jurisdiction was obtained and the relative progress of the two actions, weighs in favor of abstention because the state court proceedings obtained jurisdiction long before this federal action was initiated.

The fourth factor, (4) the desire to avoid piecemeal litigation, also favors abstention. Plaintiffs seek to have multiple state court orders in ongoing domestic proceedings declared unconstitutional. Thus, not abstaining in this case would "require the duplication of resources and potentially conflicting decisions based on the same evidence." *Creekbaum v. Creekbaum*, 2018 WL 4035962, at *3 (N.D. Ala. Aug. 23, 2018) (internal citations omitted).

The fifth factor, (5) whether federal law provides the rule of decision, is at best a neutral factor (and, in fact, may weigh slightly in favor of abstention). Although federal law provides the rule of decision on the claims pled by Plaintiffs here, examination of those issue will necessarily entail a close examination of state court custody issues. The sixth and last factor, (6) whether the state court will adequately protect the rights of all parties, weighs in favor of abstention. As discussed above, the Eleventh Circuit has "found that state courts can generally adequately address federal constitutional claims." *Shuler*, 144 F. App'x at 26. Moreover, the vast majority of the claims in the case are Alabama state law claims. (*See* Doc. # 1, generally).

The majority of the relevant *Colorado River* factors weigh in favor of abstention. Therefore, this doctrine supplies another basis for this court to abstain from exercising its jurisdiction in this case.

**F.    The Domestic Relations Exception to Federal Jurisdiction Also is a Bar to This Action**

The "domestic relations exception" provides another basis for the court to decline to exercise jurisdiction over this action. This long-standing exception instructs federal courts to abstain from assuming jurisdiction over cases that require a determination on issues of child custody, paternity, divorce, or alimony. *Moussignac v. Ga. Dep't of Human Res.*, 139 F. App'x 161, 162 (11th Cir. 2005) (per curiam) ("[F]ederal courts generally dismiss cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification.") (citing *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) (per curiam)); *see also Alliant Tax Credit 31, Inc., v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019).

Plaintiffs argue that they do not seek a divorce, alimony, or child custody decree in this court. (Doc. # 193 at 8). But, in reality, what Plaintiffs seek is an order invalidating judicial actions taken by the state courts in underlying (and pending) child custody cases. Plaintiffs ask the court to declare every act taken by Defendants in relation to their state court custody cases unconstitutional and provide an alternate forum "to hear these issues affecting [their] minor children." (Doc. # 1 at 178).

The Supreme Court reaffirmed the domestic relations exception in cases arising under diversity jurisdiction. *Ankenbrandt v. Richards*, 504 U.S. 689, 698 (1992). It appears that the Eleventh Circuit has yet to decide whether the exception also applies to cases, like this, arising under federal question jurisdiction. *See Ingram*, 866 F.3d at 370-72 (leaving the question open). However, "[e]ven when a federal question is presented, federal courts decline to hear disputes [that] would deeply involve them in adjudicating domestic matters." *Murphy v. Alabama*, 2020 WL 7395139, at *3 (S.D. Ala. Dec. 16, 2020) (quoting *Thompson v. Thompson*, 798 F.2d 1547,

1558 (9th Cir. 1986) (per curiam), *aff'd*, 484 U.S. 174 (1988)); *see also Guevara v. Padin*, 2016 WL 7188783, at *3 (S.D. Fla. Nov. 9, 2016) ("Many courts willingly apply the domestic relations exception to federal questions and constitutional issues involving intra-family disputes and decline jurisdiction over federal questions which would deeply involve them in adjudicating domestic affairs[]." (quoting *Ingram*, 866 F.2d at 371 (internal quotation marks and citations omitted)). Indeed, "[t]he policy considerations behind the domestic relations exception strongly support abstention" – even in a case before the court on a federal question. *Powell v. R.R. Ret. Bd.*, 2023 WL 3731418, at *10 (M.D. Ala. May 15, 2023), *report and recommendation adopted*, 2023 WL 3730290 (M.D. Ala. May 30, 2023) (quoting *Ankenbrandt*, 504 U.S. at 704); *see also Todd v. Bahrke*, 604 Fed. Appx. 558, 559 (9th Cir. 2015) (affirming district court's dismissal of a § 1983 case alleging federal and state law violations arising out of child custody proceedings in which the district court found that the domestic relations exception bolstered the determination that subject matter jurisdiction was inappropriate); *Angelet v. Ruiz*, 2016 WL 2977271, at *2 (E.D.N.Y. May 20, 2016) (applying the domestic relations exception and finding lack of subject matter jurisdiction over a § 1983 action relating to child custody by a father against his ex-wife and various state court judges and officials).

Plaintiffs cite *Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019), for the proposition that the domestic relations exception does not apply here because there are parties to this matter who are not parties to the state court cases. (Doc. # 193 at 8). In *Alliant*, the plaintiffs filed a claim under the Uniform Fraudulent Transfers Act to set aside transfers of assets made pursuant to a divorce settlement agreement between two of the federal-court defendants. 924 F.3d at 1138-39. In holding that the exception did not apply, the Eleventh Circuit noted that "[t]he less a case is a 'core' domestic relations case, *e.g.*, one for a divorce or a simple child custody

dispute, the less discretion the district court has to refuse to exercise its jurisdiction." *Id*. at 1146 (quoting *Kirby v. Mellenger*, 830 F.2d 176, 179 (11th Cir. 1987). But, unlike Alliant Tax Credit 31, this case involves a claim that involving child custody is unconstitutional. So, this case is clearly closer to the "core" domestic relations than the fraudulent transfer issues were in *Alliant*.

Considering the relief Plaintiffs requested in their Complaint, the point is as tautological as it is true: if this court were to exercise jurisdiction over this dispute, it would inevitably be compelled to conduct an inquiry into various aspects of ongoing custody issues. It follows that the domestic relations exception provides yet another reason this court should refrain from adjudicating Plaintiffs' claims. *Ingram*, 866 F.2d at 370 (noting that federal courts should dismiss an action under the domestic relations exception "if hearing the claim would mandate inquiry into the marital or parent-child relationship") (citation omitted).

## IV.    Conclusion

Principles of comity, equity, and federalism, which underly all of the doctrines discussed above, counsel in favor of this court abstaining from exercising jurisdiction over Plaintiffs' claims in this case. *See J.B. v. Woodard*, 2021 WL 1903214, at *7 (7th Cir. May 12, 2021) ("federal adjudication of [the plaintiff's] claims would 'reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts.'") (internal citations omitted)). Therefore, Defendants' Motions to Dismiss are due to be granted.

An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 19, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE